# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LEO F. GLOSEMEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:14-CV-00414 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Leo F. Glosemeyer brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), requiring him to repay social security benefits that he received as the result of a series of overpayments beginning in 1989. (Docket Entry 1.) The parties filed cross-motions for judgment on the pleadings (Docket Entries 11, 16) as directed (Docket Entry 9). Along with the parties' motions, the Court has before it the certified administrative record (cited herein as "Tr. ___"). (Docket Entry 8.) For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. BACKGROUND

In January 1989, Plaintiff filed an application for spouse's insurance benefits on his wife's record. (Tr. 20, 27.)[1] In that application, "[Plaintiff] disclosed that he received a government pension based on earnings not subject to FICA taxation" (the "non-covered pension"). (Tr. 20; see also Tr. 24-25, 27.) Based on that application, the Social Security Administration (the "SSA") found Plaintiff eligible to receive spouse's benefits effective January 1989. (Tr. 20, 27.)

Pursuant to 20 C.F.R. § 404.408a, however, the SSA should have applied the government pension offset (the "GPO") to reduce Plaintiff's spouse's benefit amount to zero (Tr. 20) because Plaintiff was entitled "to a pension that was not covered under Social Security and two-thirds of the amount of [his non-covered] pension exceed[ed] the full amount of [the] monthly Social Security [spouse's] benefit" (Tr. 27; see Tr. 20; 20 C.F.R. § 404.408a(b)-(d).) To obtain an exemption from the GPO, a male claimant must have been eligible for a government pension before December 1982 and must have received at least one-half support from his spouse at the time he applied for spouse's benefits. 20 C.F.R. § 404.408a(b)(2). Although Plaintiff met the first criteria, he did not meet the second criteria because his wife did not provide at

---

[1] "Spouse's benefits are Social Security benefits [an applicant] receive[s] as a wife, husband, [or] widow(er) . . . ." 20 C.F.R. § 404.408a(a)(1)(iii).

least one-half of his support when he applied for spouse's benefits. (Tr. 27.)

When his wife passed away in 2008, Plaintiff filed for benefits on his own record and began receiving monthly widower's benefits. (Tr. 20, 135.) Plaintiff later applied for retirement insurance benefits, and "during the course of adjudication of that claim," the SSA discovered its earlier mistake of not reducing Plaintiff's spouse's benefits under the GPO provision. (Tr. 20, 24-25.) From 2009 through 2011, Plaintiff received varying notices about the amount of benefits for which he qualified under his own record and the amount of overpayment he received on his wife's record. (Compare Tr. 133-34 (May 3, 2009 letter advising Plaintiff that he might qualify for more benefits on his own retirement record), and Tr. 127-28 (November 6, 2009 letter advising Plaintiff of his entitlement to more benefits based on earnings the SSA had not considered), with Tr. 120-23 (December 19, 2009 letter advising Plaintiff that he owed $3,424.00 due to overpayment on his social security number), and Tr. 87-90 (March 26, 2011 letter advising Plaintiff that he owed $18,511.50 due to overpayment of benefits on his wife's record).)

Ultimately, the SSA determined that Plaintiff should not have received benefits on his wife's record. (Tr. 27-30.) The SSA further determined that it could not correct the January 1989 benefit award because that award occurred more than four years

3

before the SSA discovered the error. (Tr. 24-25, 27.) In December 1989, however, Plaintiff received a cost of living adjustment ("COLA") to his non-covered pension, which was not reported to the SSA. (Tr. 20.) Pursuant to the SSA's Program Operations Manual System ("POMS"), "the COLA was unreported new information that changed the factual situation" regarding that award, which permitted "a reopened and revised initial determination effective December 1989." (Tr. 20, 24-25 (citing POMS GN 04030.090).)[2] Consequently, the SSA corrected the record as of December 1989, determining that the GPO applied and disentitled Plaintiff to spouse's benefits, such that he received an overpayment of $18,511.50. (Tr. 27-28.)

On March 26, 2011, the SSA notified Plaintiff by letter of its determination. (Tr. 27-30.) Plaintiff requested reconsideration of the SSA's decision to recover the overpayment, but the SSA upheld its decision on June 20, 2011. (Tr. 34-37.) Plaintiff appealed the SSA's decision to an Administrative Law Judge (the "ALJ"). (Tr. 19-23.) The ALJ held a hearing on April 19, 2012, at which Plaintiff appeared with counsel. (Tr. 19, 138.) On April 26, 2012, the ALJ issued a decision finding that Plaintiff did not mislead the SSA and that "there is no question that [Plaintiff] is

---

[2] The SSA uses POMS in processing benefit claims. See Wilson v. Apfel, 81 F. Supp. 2d 649, 653 (W.D. Va. 2000) ("The POMS guidelines represent the Commissioner's interpretation of the governing statutes and regulations, and so are entitled to some deference.").

4

without fault in regard to the overpayment." (Tr. 21.) Nevertheless, the ALJ concluded that the SSA had assessed an overpayment for the period from 1989 through 2010 in the amount of $18,511.50, and no grounds for waiver of repayment existed. (Tr. 21-22.)

Plaintiff appealed the ALJ's decision to the Appeals Council (Tr. 8-15), which rendered a decision on March 25, 2014, denying Plaintiff's request for review (Tr. 3-6). As a result, the ALJ's decision became the Commissioner's final decision. See Wilkins v. Sec'y of D.H.H.S., 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff thereafter filed the current action to obtain judicial review of the Commissioner's decision. (Docket Entry 1.) The Court ordered the matter heard on cross-motions for judgment on the pleadings in accordance with Federal Rule of Civil Procedure 12(c). (Docket Entry 9.) Plaintiff filed his Motion for Judgment on the Pleadings (Docket Entry 11), and the Commissioner filed its Motion for Judgment on the Pleadings (Docket Entry 16).

## II. DISCUSSION

Federal law authorizes judicial review of the Social Security Commissioner's final decisions. 42 U.S.C. § 405(g). When reviewing the Commissioner's decision to deny a request for waiver of repayment of overpaid social security benefits, "[t]he [C]ourt must affirm the denial of [the] request for waiver of repayment if substantial evidence supports the decision and the Commissioner has

5

committed no error of law." Banuelos v. Chater, 974 F. Supp. 652, 656 (N.D. Ill. 1997).  Plaintiff has not established entitlement to relief under that standard.

**A. Standard of Review**

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration and internal quotation marks omitted).  "The findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). "Concerning questions of law, deference is given to the [Commissioner's] interpretation of statutes and regulations governing the program it administers."  Broeckert v. Sullivan, 751 F. Supp. 1361, 1362 (W.D. Wis. 1990) (citing Rosado v. Wyman, 397 U.S. 397, 415 (1970)); see also Elshinnawy v. Comm'r of Soc. Sec. Admin., 244 F. App'x 459, 461-62 (3d Cir. 2007) ("Because Congress has delegated to the Commissioner the responsibility to administer complex benefits programs, we defer to the Commissioner's interpretation of Social Security legislation, as long as it is reasonable and not arbitrary and capricious." (citing Sanfilippo v. Barnhart, 325 F.3d 391, 393 (3d Cir. 2003))).

"The reviewing court may not substitute its own judgment for that of the [Commissioner] or reweigh the evidence; nor may the court simply rubber-stamp the [Commissioner]'s decision." Banuelos, 974 F. Supp. at 656. Instead, the Court must review the entire record to determine whether evidence supports the Commissioner's decision to deny waiver of repayment. See id. "[W]here reasonable minds could differ in construing the evidence, the [C]ourt must defer to the Commissioner's decision." Id.

**B. Analysis**

Plaintiff asserts three bases for reversing the Commissioner's decision and waiving recovery of the overpaid social security benefits: (1) pursuant to 20 C.F.R. §§ 404.510a and 404.512(a), Plaintiff's lack of fault and reliance upon erroneous information from the SSA precludes recovery (Docket Entry 12 at 3-8); (2) the application of the GPO violates the Constitution (id. at 8-9); and (3) "[s]ubstantial evidence in the record supports the determination that recovery of [the overpayment] is against equity and good conscience" (id. at 10-12).

**1. Application of 20 C.F.R. §§ 404.510a and 404.512(a)**

The parties do not dispute, that under the SSA's regulations, Plaintiff received an overpayment of $18,511.50 in benefits from December 1989 through February 2010. (See Docket Entries 12, 17; see also Tr. 27-30.) Similarly, the parties agree that Plaintiff was "without fault" in receiving the overpaid benefits. (Docket

7

Entry 12 at 3; Docket Entry 17 at 8.) Plaintiff, however, contends that the Commissioner failed to apply the analysis required under 20 C.F.R. §§ 404.510a and 404.512(a) to determine whether the overpayment is deemed waived. (Docket Entry 12 at 3-8.) In response, the Commissioner argues that those regulations do not apply here because Plaintiff did not rely on information from the SSA in accepting any overpayment. (Docket Entry 17 at 11.)

The Act permits waiver of overpayment "from[] any person who is without fault if such adjustment or recovery would defeat the purpose of [title II of the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b); accord 20 C.F.R. § 404.506(a); see also Thomas v. Sullivan, Civ. Action No. 90-2058, 1991 WL 4642, at *1 (4th Cir. Jan. 23, 1991) (unpublished) (affirming district court's denial of waiver finding claimant at fault). "Where an individual . . . accepts [an] overpayment because of reliance on erroneous information from an official source within the [SSA] . . . with respect to the interpretation of a pertinent provision of the [] Act or regulations pertaining thereto, . . . such individual, in accepting such overpayment, will be deemed to be without fault," 20 C.F.R. § 404.510a, and "adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience," 20 C.F.R. § 404.512. "Thus, someone who relies on erroneous information from an official source [within the SSA] meets both

8

requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, *and* recovery would be against equity and good conscience." Gladden v. Callahan, 139 F.3d 1219, 1223 (8th Cir. 1998) (emphasis in original).

"Such reliance necessarily involves some affirmative action by the over-paid claimant, some change in the claimant's position, as a result of the erroneous information." Beaudry v. Sec'y of H.H.S., Civ. Action No. 90-30093-F, 1991 WL 319161, at *7 (D. Mass. Sept. 24, 1991) (unpublished) (footnote omitted). Some "[c]ourts are quite liberal in finding the requisite level of reliance," concluding that "even mere receipt and exhaustion, for ordinary living expenses, of the overpaid monies may prove sufficient." Id.

To support his position, Plaintiff heavily relies on Gladden (Docket Entry 12 at 7-8), a case in which the claimant altered his social life and maintained his work schedule in reliance on the ALJ's interpretation of "substantial gainful activity." Gladden, 139 F.3d at 1221-22. Specifically, the ALJ incorrectly advised the claimant that "he would be all right, so to speak, as long as he did not work 40 hours a week." Id. at 1222. Under those circumstances, the court deemed recovery of the claimant's overpaid social security benefits waived under 20 C.F.R. §§ 404.510a and 404.512(a), concluding that the claimant had relied on the ALJ's guidance for years in attempting to comply with the agency's regulations and the record lacked any "evidence of when (if ever)

9

[the claimant] began working 40 hours a week, enough to qualify him as not disabled under the definition he had been given [by the ALJ]." See id. at 1223; see also Wiles v. Colvin, 13 F. Supp. 3d 1007, 1014-15 (D. Neb. 2014) (finding waiver where mother accepted overpayments on her children's behalf in reliance on repeated misinformation from official SSA sources and used that money to pay expenses she would not have incurred had she known that she would have to repay the money).

Here, Plaintiff generally contends that the SSA's "confusing and conflicting language contained in the two years of correspondence [from 2009 though 2011] alone constitutes erroneous information regarding provisions of the Act," and that he "relied on [those] repeated communications . . . regarding [his] benefits." (Docket Entry 12 at 8.) Assuming, arguendo, that the SSA's notices constitute "erroneous information from an official source," Plaintiff does not specify which, if any, of the communications he relied upon in accepting an overpayment that would qualify him for waiver under 20 C.F.R. §§ 404.510a and 404.512(a).[3]

---

[3] To qualify as having received information from an official source, "a claimant must make actual inquiry with respect to either the law or an entitlement to benefits under the law." Beaudry, 1991 WL 319161, at *8. Supplemental letters outlining a claimant's entitlement to benefits and a benefit increase which make no explicit or specific interpretation of a pertinent provision of the Act do not constitute information from an official source within the SSA. Valley v. Comm'r of Soc. Sec., 427 F.3d 388, 393 (6th Cir. 2005) ("[B]enefit notices sent with benefit checks do not constitute interpretations of the Act or regulations . . . .").

10

Rather, the overpayments began in December 1989 and lasted until February 2010. (Tr. 28.) Plaintiff did not receive a confusing or conflicting notice about his entitlement to spouse's benefits until 2009, (see Docket Entry 12 at 4-5), and did not "contact[] the [SSA] to discuss his . . . government pension information" and spouse's benefits until August 2009 (id. at 4; Tr. 24-26). The SSA, therefore, sent its notices after Plaintiff received spouse's benefits for nearly 20 years, undercutting Plaintiff's contention that he relied on the SSA's confusing and conflicting notices to accept the overpayments. See Fout v. Astrue, No. 5:10-CV-132, 2011 WL 7989958, at *7 (N.D.W. Va. Oct. 6, 2011) (unpublished) ("Even assuming that either ALJ provided erroneous information about what type of income is considered [in determining eligibility for the benefits], [the plaintiff] did not rely on these statements in accepting the overpayments because these statements would have been made **after** the period at issue during which [the plaintiff] continued to receive [benefits]." (emphasis in original)).

When examining this point, the ALJ

> considered that the overpayment arose entirely through administrative error, . . . [and] the confusing and conflicting notices that [Plaintiff] received from the [SSA] . . ., as well as the length of the overpayment period and the fact that although the overpayment period begins in December 1989, the period was not established until more than 20 years later. Nevertheless, [the ALJ found] no indication that [Plaintiff] changed his financial position for the worse in reliance on the overpaid benefits, that he gave up any valuable financial consideration in reliance on the overpaid

11

> benefits, that he used the benefits in question to purchase goods or services that he would not otherwise have purchased, or that his lifestyle was appreciably different having received the benefits in question as compared to what it would have been had he not received them.

(Tr. 22. (emphasis added).) In addition, when questioned by the ALJ, Plaintiff initially denied having been misled by the SSA (Tr. 144), and his attorney stated "for the record that it's not so much that [Plaintiff] felt the [SSA] actively misled him as that" making the initial determination in 2011 for a benefit begun in 1989 is "just purely unfair." (Tr. 147.) In sum, the record establishes that Plaintiff did not rely upon any erroneous information from an official source in accepting the overpayments.[4] Accordingly, the ALJ committed no error by refraining from applying 20 C.F.R. §§ 404.510a and 404.512(a) in this case.

## **2. Constitutional Challenge**

Plaintiff next challenges the constitutionality of the "one-half support test" under 20 C.F.R. § 404.408a(b), asserting that applying the gender-based exception to recover overpayments he received through no fault of his own violates the constitutional standard recognized in <u>Heckler v. Mathews</u>, 465 U.S. 728 (1984). (Docket Entry 12 at 9.) In that decision, the Supreme Court

---

[4] Plaintiff also does not argue that he altered his position, vis-à-vis the $18,511.50, in reliance on any of the SSA's 2009-2011 letters. (<u>See</u> Tr. 144-45.) Notably, Plaintiff did not receive overpayments after February 2010 (Tr. 88) and he did not communicate or receive notices from the SSA about the overpayment issue until late 2009 (<u>see</u> Tr. 24-26, 124-26).

12

Case 1:14-cv-00414-WO-LPA Document 18 Filed 10/13/15 Page 12 of 19

explained that, "[p]rior to December 1977, [spouse's] benefits were only payable to those husbands or widowers who could demonstrate dependency on their wage-earning wives for one-half of their support. Wives and widows, on the other hand, were entitled to spous[e's] benefits without any such showing of dependency on their husbands." Heckler, 465 U.S. at 731. In March 1977, the Supreme Court invalidated that gender-based distinction, Califano v. Goldfarb, 430 U.S. 199 (1977), because it violated the equal protection component of the Due Process Clause of the Fifth Amendment, Heckler, 465 U.S. at 730-31. To avert feared resulting fiscal problems for the Social Security trust fund, Congress enacted the GPO provision, which generally reduces spouse's benefits by the amount of any government pensions the applicant receives. Id. at 732.

Congress, however, also recognized that some individuals, mostly women but also dependent men, "had retired or were about to retire and [] had planned their retirements in reliance on their entitlement, under pre-1977 law, to spous[e's] benefits unreduced by government pension benefits." Id. at 733. To protect the reliance interests of this group, Congress included an exception to the GPO that "provides a five-year grace period for all women who retire within five years of the enactment, and for men" who could demonstrate dependency on their wage-earning wives for one-half of their support. Id. at 736 (internal quotation marks omitted).

13

Although this exception temporarily revived the gender-based classification invalidated in Goldfarb, the Heckler Court upheld the classification as "directly and substantially related to the important governmental interest of protecting individuals who planned their retirements in reasonable reliance on the law in effect prior to [the Goldfarb] decision." Id. at 750-51.

Here, Plaintiff retired in 1980 and could collect his government pension prior to 1982. (Docket Entry 12 at 8-9; Tr. 24-25, 27.) Therefore, Plaintiff could have qualified for the gender-based exception to the GPO if he received one-half support from his wife. See 20 C.F.R. § 404.408a(b)-(c).

Plaintiff does not dispute that he failed the one-half support test when he initially applied for spouse's benefits, such that he lacked entitlement to spouse's benefits, but for the SSA's miscalculation. (See Docket Entry 12.) In short, the pension offset exception never applied to Plaintiff's case, because he did not receive one-half support from his wife. (Tr. 27.) When Plaintiff first applied for spouse's benefits in 1989, Heckler already had upheld this gender-based exception. See id. 465 U.S. at 750-51. Moreover, Heckler held that Congress acted pursuant to legitimate goals (of protecting the reliance interests of people retiring or planning their retirements based on pre-1977 law) that outweighed a gender-based equal protection challenge. Id. Those considerations have not changed since the decision in Heckler.

14

Clark v. Shalala, Civ. Action No. C-2-93-640, 1994 WL 160123, at *3-4 (S.D. Ohio Jan. 25, 1994) (unpublished) (rejecting similar constitutional challenge). Because Heckler controls, the Court should not find the one-half support test unconstitutional. See id.

### 3. Equity and Good Conscience

Plaintiff next seeks waiver of recovery of the overpayments by applying the ordinary, contemporary, and common meaning of the phrase "against equity and good conscience." (Docket Entry 12 at 11.) In response, the Commissioner maintains that the Court should apply the specific regulatory definition of that phrase and that, under the regulatory definition, substantial evidence supports the ALJ's finding that recovery of the overpayment is not "against equity and good conscience." (Docket Entry 17 at 10.)

The Act waives recovery of overpayment for an individual without fault in causing an overpayment, if recovery would be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a). The regulations further define such recovery as situations in which an individual "[c]hanged his or her position for the worse [] or relinquished a valuable right [] because of reliance upon a notice that a payment would be made or because of the overpayment itself." 20 C.F.R. § 404.509(a)(1). The individual's change of position suffices, "as long as it involves an expenditure which would not have been made but for the incorrect

15

benefit payment." Cucuzzella v. Weinberger, 395 F. Supp. 1288, 1298 (D. Del. 1975) (citing 20 C.F.R. § 404.509, example 4). Where benefits "are merged with common funds, but other money is spent in a way in which it would not have been but for the receipt of the benefits, the reliance standard of the regulation will be satisfied." Id. Moreover, "[t]he individual's financial circumstances are not material to a finding of against equity and good conscience." 20 C.F.R. § 404.509(b).

Plaintiff contends that, as applied here, "against equity and good conscience" should reach beyond the regulatory definition to encompass "the spirit and habit of fairness and justness and the sense of right or wrong together with a feeling of obligation to do or be that which is recognized as good." (Docket Entry 12 at 11 (citing Groseclose v. Brown, 809 F.2d 502, 505 (8th Cir. 1987)).) Without Fourth Circuit authority applying this understanding in SSA matters, the Court should not stray from the regulatory definition of the phrase. See Seigler v. Sec'y of H.H.S., Civ. Action No. 3:85-2965-14(H), 1986 WL 83453, at *3 (D.S.C. Nov. 28, 1986) (applying regulatory definition of equity and good conscience and finding no evidence in the record to show "that the plaintiff incurred debts or made substantial purchases she would not have made except for the overpaid benefits, nor that she forfeited a valuable right by relying upon the benefits"); but cf. Quinlivan v. Sullivan, 916 F.2d 524, 526–27 (9th Cir. 1990) (applying broader

16

concept of fairness and ordinary meaning of statutory language to take into account facts and circumstances of each case); <u>Stolzfus v. Astrue</u>, Civ. Action No. 11-6056, 2013 WL 1842237, at *5 (E.D. Pa. May 1, 2013) (unpublished) (following plain language of statute, which allows courts discretion to determine when to waive overpayment).

In the only case Plaintiff cites on point (<u>see</u> Docket Entry 12 at 11), the claimant was ordered to repay insurance benefits for his daughter who did not live with him. <u>Groseclose</u>, 809 F.2d at 503. The claimant's daughter became ineligible for benefits because she did not maintain full-time enrollment at an educational institution. <u>Id.</u> The claimant neither knew of his daughter's enrollment status or receipt of benefits, nor received the overpayments in question. <u>Id.</u> at 506. Under those facts, the Eighth Circuit utilized the common, ordinary meaning of "against equity and good conscience," because it found the regulatory definition too narrow. <u>Id.</u>

Shortly after the decision in <u>Groseclose</u>, however, the regulations were amended to provide for the "<u>Groseclose</u>" fact pattern. <u>Rules and Regulations, Dep't of H.H.S.</u>, 53 FR 25481-02 (Jul. 7, 1988); <u>see</u> 20 C.F.R. § 404.509(a)(2) ("Recovery of an overpayment is against equity and good conscience . . . if an individual — (2) Was living in a separate household from the overpaid person at the time of the overpayment and did not receive

17

the overpayment."). When amending the regulatory definition of the phrase, the agency declined to adopt its common, ordinary meaning as applied in Groseclose. In deference to the Commissioner's interpretation, the Court should therefore apply the regulatory definition of "against equity and good conscience" here. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844 (1984) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

As the ALJ acknowledged, "this is a difficult case, both from the standpoint of the technical issues involved, the length of the overpayment period, and the late date of the establishment of the overpayment." (Tr. 20.) Nevertheless, based on the complete record, the Court should find that recovery of the overpayments is not against equity and good conscience. See 20 C.F.R. § 404.509(a)(1). Of particular note, when the ALJ questioned Plaintiff on whether recovery would be "against equity and good conscience," the following dialogue ensued:

> Q With respect to the . . . $18,511 [overpayment], . . . what did you do with the money?
> . . .
> A -- some went to savings and others for normal living expenses.
> . . .
> Q So, what would you not have bought if you had not had this money? . . .
> A Oh, I would have lived the same way without the money as I did.
> . . .
> Q There wasn't anything that you could say that you wouldn't

18

```
have bought if you didn't have the money?
A No, that's right.
Q Okay.  So, it really just went into your general living
arrangements?
A Correct.
Q And you didn't buy anything special with this money that you
wouldn't have otherwise bought?
A That's right, sir.
```

(Tr. 143-44.)

Given Plaintiff's repeated insistence that he did not change his position for the worse and the absence of evidence that Plaintiff released a valuable right in reliance on the overpayment, the record supports the finding that recovery of the overpayment is not against equity and good conscience.  Moreover, the ALJ properly considered all relevant regulatory factors and adequately explained the reasons for his determinations.  For these reasons, Plaintiff's instant assignment of error must fail.

### III. CONCLUSION

Plaintiff has not established entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied and that the Commissioner's Motion for Judgment on the Pleadings (Docket Entry 16) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 13, 2015